Affirmed and Memorandum Opinion
filed February 3, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00520-CV

NO. 14-09-00674-CV



IN THE ESTATE OF VIRGINIA WILLIAMS, DECEASED[1]



On Appeal from Probate
Court No. 3

Harris County, Texas

Trial Court
Cause No. 351,411



 

MEMORANDUM OPINION 

Donn L. Williams, acting pro se, complains of two
trial court orders in this appeal.  In nine issues, he challenges the trial
court’s entry of an order regarding the transfer of insurance checks from an
underlying car-accident lawsuit.  In five additional issues, he challenges the
trial court’s imposition of sanctions for filing an unwarranted and improper
motion for new trial based on the trial court’s entry of the first order. 
After thoroughly reviewing the record, we issue this memorandum opinion
affirming the trial court’s orders.  

BACKGROUND

These appeals arise from the settlement of a case
involving an automobile accident.  Because of the nature of Williams’ appellate
issues, a fairly detailed background of some of the underlying facts will provide
context to this particular controversy, even though many of these facts are not
relevant to our disposition.   

In August 2004, Donn Williams (“Williams”) was
injured and his mother, Virginia Williams, was killed in an automobile accident
in Houston.  Williams and the executor of his mother’s estate, Timothy Maiden, retained
the law firm Simmons & Fletcher on a contingency-fee basis to represent
them in their lawsuit against the driver and the owners of the vehicle that
caused the accident.  The suit was originally filed in a Harris County district
court, but was transferred to Harris County Probate Court No. 3, which was the
court overseeing probate of the Estate of Virginia Williams (the “Estate”).  Before
trial, the defendants in the automobile-accident case agreed to settle with the
Estate for $250,000 and with Williams for $750,000.  The settlement funds were
paid into the registry of the court.[2] 


As is relevant here, sometime during the settlement proceedings,
a dispute arose between Williams and Simmons & Fletcher.  Williams
apparently obtained additional counsel to assist him with this dispute.[3]  In August
2008, during a hearing on a motion to withdraw filed by Elton Lockings  (Williams’
attorney),  a Rule 11 agreement was entered into by Keith Fletcher (“Fletcher”)
of Simmons & Fletcher, Williams’ attorney-in-fact, Elwin Maiden, acting on Williams’
behalf, and Lockings.  This Agreement purported to settle the dispute between Williams
and Simmons & Fletcher (the “agreement”).[4] 
The agreement provided for payment of $500,000 of the $750,000 obtained from
settlement of the personal injury lawsuit to Williams.  Various other amounts
were due Williams under the agreement, including $17,000, designated as “approx
recovery less 1/3 to Keith Fletcher from PIP [Personal Injury Protection
insurance] & UIM [Uninsured Motorist insurance.]”[5]  As part of
this agreement, Williams was to sign “the release, and the UIM and PIP checks,
within 10 days of receipt[.]”  Lockings and Fletcher additionally agreed to
“complete all necessary and additional documents to release the funds.”

Williams, however, refused to sign the release or the
UIM and PIP checks.  Simmons & Fletcher filed a petition in intervention
and third-party petition in October 2010.  In the petition in intervention,
Simmons & Fletcher sought enforcement of its contingency-fee agreement
signed by Williams.  In the third-party petition, Simmons & Fletcher
alleged that Elwin Maiden (a) exerted undue influence on Williams, (b)
tortiously interfered with Simmons & Fletcher’s contract with Williams, and
(c) engaged in the unlicensed practice of law.  Simmons & Fletcher sought
an order enjoining Elwin Maiden from practicing law without a license and
continuing to exert undue influence over Williams.  Simmons & Fletcher
further sought enforcement of the Rule 11 agreement signed in August 2008.  A
hearing was held on November 3, 2008.  On that same day, Williams filed a “motion
to compel/enforce” the agreement, in which he asserted that the “release”
referred to in the agreement was a release of the funds held in the court’s
registry, not a release of liability regarding the actions of Fletcher and
Simmons & Fletcher in prosecuting his lawsuit.

At this hearing, the trial court heard argument from
both attorneys concerning the agreement.  Ultimately, the court determined that
Williams’ representative, Elwin Maiden, had agreed to release Fletcher and
Simmons & Fletcher from liability and that Simmons & Fletcher was
entitled to recover its legal fees from the funds remaining in the registry of
the court.  The trial signed a nunc pro tunc order approving the settlement on
November 10, 2008 (the “settlement order”), in which it stated:

[O]n this date came on to be heard the Motion to Approve
Settlement and the Court, after reviewing finds the Motion to be meritorious. 
Accordingly, it is

ORDERED that the Attorneys’ fees Contract of Simmons &
Fletcher and Donn Williams, attached hereto (Exhibit A), is ratified and
approved as reasonable and necessary.  It is further

ORDERED that the Settlement Summary prepared by Simmons
& Fletcher and attached hereto (Exhibit B) is approved.  It is further

ORDERED that DONN WILLIAMS has full power and authority to
execute the UIM and PIP checks along with the Settlement Summary and Release in
this matter, and he, along with Simmons & Fletcher are ordered to endorse
these checks. It is further

ORDERED that the $750,056 personal injury and wrongful
death settlement involving DONN WILLIAMS along with the $2,500 PIP and $25,000
UIM payments are APPROVED.  It is further

ORDERED that DONN WILLIAMS will receive $531,200 from the
total settlement amount of $777,556.00; it is further

ORDERED that Simmons & Fletcher will receive
$246,356.00 from the total settlement amount of $777,556.00 which amount
represents (a) reasonable and necessary attorneys’ fees in the amount of
$237,476.17; (b) reasonable and necessary litigation expenses and court costs
in the amount of $4,619.91; (c) reasonable and necessary advances in the amount
of $740.76, and (d) reasonable and necessary satisfaction of the Letters of Protection
written to Donn Williams’ healthcare providers in the amount of $3,519.16.  It
is further

ORDERED that one third (1/3) of any accrued interest with
the District Court Clerk and/or the County Clerk’s office concerning the
$750,056.00 settlement funds will be paid to Simmons & Fletcher and
two-thirds (2/3) will be paid to DONN WILLIAMS. It is further 

ORDERED that the County Clerk and/or the District Clerk
shall issue one check payable to Simmons & Fletcher for one-third of the
accrued interest on the $150,056.00 settlement funds; it is further

ORDERED that the County Clerk and/or the District Clerk
shall issue one check payable to Simmons & Fletcher for $235,856.00, which
amount represents their portion of the $750,056.00 gross settlement amount; it
is further

ORDERED that DONN WILLIAMS will sign and execute the
attached Release of Keith Fletcher & Simmons & Fletcher within seven (7)
days and return same to Keith M. Fletcher of Simmons & Fletcher within
fourteen days.  Failing to so do, DONN WILLIAMS will be assessed $100.00 per
day, payable to Simmons & Fletcher, out of his funds in the Registry of the
District Clerk, until the executed Release is received by Keith Fletcher at
Simmons & Fletcher with no changes made to said release.  No funds in the
Registry of the Court shall be payable to Donn Williams until Keith M. Fletcher
files the properly-signed and executed Release with the District Clerk.  Keith
M. Fletcher shall file the executed Release within three business days of
receipt and shall file his Affidavit evidencing the date of his receipt of said
Release, along with the total number of days of the assessment.

ORDERED that upon receipt of the executed Release filed by
Keith M. Fletcher, the County Clerk and/or the District Clerk will issue one
check payable to DONN WILLIAMS for two-thirds of the accrued interest on the
$750,056.00 settlement funds.  It is further 

ORDERED that upon receipt of the executed Release filed by
Keith M. Fletcher, the County Clerk and/or the District Clerk shall issue one
check payable to DONN WILLIAMS for $514,200.00, which amount represents his
portion of the $750,056.00 gross settlement amount, less the $100.00 per day
assessment which assessment will be paid to Simmons & Fletcher; it is
further

ORDERED that ELTON LOCKINGS will deposit the PIP and UIM
checks into his IOLTA account and from such account he will pay $17,000.00 to DONN
WILLIAMS and $10,500.00 to Simmons & Fletcher once those checks have
cleared.

Williams filed a motion for new trial challenging the
settlement order on December 10, 2008.  During the hearing on the motion, held
January 27, 2009, Elton Lockings, on behalf of Williams, notified the court
that Williams refused to endorse the UM and PIP checks or sign the release. 
Lockings turned over the two insurance checks to the trial court, which the
trial court, in turn, gave to Fletcher for safekeeping at Simmons &
Fletcher until Williams agreed to sign the release.  Lockings further requested
permission to withdraw from the case.  The trial court denied the motion for
new trial and allowed Lockings to withdraw as Williams’ attorney.  Williams
filed a pro se notice of appeal of the settlement order on February 25, 2009. 
Because Williams’ notice of appeal was filed untimely, and his response to our
notification of our intent to dismiss did not demonstrate that we had
jurisdiction to entertain his appeal, this court dismissed his appeal for want
of jurisdiction on May 21, 2009.[6] 


On May 8, 2009, Simmons & Fletcher filed a
“partially opposed” motion to transfer custody of the UM and PIP checks.  According
to the motion, it was “partially opposed” because Elwin Maiden, as Williams’
attorney-in-fact, indicated that he did not oppose the transfer of the checks,
but opposed inclusion of a “Mother Hubbard” clause and language indicating that
the order was final and appealable.  The trial court heard the motion on May
14, 2009, and on that same date signed an order transferring custody of these
checks. The order contained the following language:

All relief that was requested in the above-captioned cause
and which is not granted herein or in a prior order of this Court is hereby
DENIED.  This is intended to be a final order disposing of all issues raised by
all parties.  Accordingly, this is a final order that may be appealed as such.

Williams filed a motion for
new trial on May 20, 2009, and a notice of appeal on June 3, 2009.[7]  This
appeal was docketed in our court under cause number 14-09-00520-CV.

Williams filed an
amended motion for new trial on June 3, 2009, and a “new” amended motion for
new trial on June 8, 2009.  Simmons & Fletcher responded to Williams’
motion for new trial on June 19, 2009, and sought sanctions under Chapter 10 of
the Texas Civil Practice & Remedies Code and Texas Rule of Civil Procedure
13.  The trial court heard Simmons & Fletcher’s motion for sanctions on
June 23; Williams did not appear at this hearing.  On that same date, the trial
court granted the motion for sanctions and signed an order requiring Williams
to pay $2,880.00 to cover the attorney’s fees Simmons & Fletcher incurred
in responding to Williams’ motions for new trial.  The trial court stated in
the order:

The Court considered the Motion for Chapter 10 and Rule 13
Sanctions filed by Simmons & Fletcher.  After hearing evidence and taking
judicial notice of the Court’s entire file in the above-captioned and numbered
lawsuit, the Court finds that such motion is meritorious and should be, and
hereby is, GRANTED in its entirety.  Specifically, the Court finds that Donn
Williams’ Motion for New Trial: (1) is groundless and was brought in bad faith;
(2) is groundless and was brought for the purposes of harassment; and (3) is
being presented to this Court for an improper purpose.  Specifically, both Mr.
Williams and Mr. Maiden have repeatedly expressed their angst and animosity
toward Simmons & Fletcher, even to the point of filing both a written
pleading (Donn Williams’ Motion for New Trial) and a sworn affidavit (of Donn
Williams) threatening to file suit against either Keith Fletcher, Simmons &
Fletcher, or both. The Court further finds that Donn Williams’ Motion for New Trial
is not warranted by existing law or by a nonfrivolous argument for the
extension, modification, or reversal of existing law or the establishment of
new law.

            Accordingly, the Court hereby ORDERS
Donn Williams and Elwin Maiden, jointly and severally, to pay Keith Fletcher of
Simmons & Fletcher the sum of TWO THOUSAND EIGHT HUNDRED AND EIGHTY DOLLARS
AND NO CENTS ($2,880.00) pursuant to Texas Rule of Civil Procedure 13 and
Chapter 10 of the Texas Civil Practice & Remedies Code Annotated. . . .

Williams filed a notice of appeal from the sanctions order on July 22,
2009, and this appeal was docketed under cause number 14-09-00674-CV.  We
consolidated these appeals and address the issues presented in both appeals in
this opinion.

ISSUES

Williams appeals the trial court’s order transferring
custody of the UM and PIP checks (the “UM/PIP order”) on the following grounds:

(1)   Fletcher
became a party to the lawsuit when he filed his Petition in Intervention and
Third Party Petition.

(2)  The
UM/PIP order is a final order, and it is incorrect and unjust as all issues
between the parties have not been resolved. 

(3)  Williams
objected to this order and advised the trial court that he was in disagreement
with the order.  

(4)  A
party cannot accept a judgment as both right and wrong.

(5)  Fletcher
should be severed entirely as the controversy involves more than one cause of
action; the severed claim(s) could be independently asserted in a separate
lawsuit; the severed cause(s) are not so interwoven with the cause that made
basis the original lawsuit that it involves the same facts and issues; and
severing Fletcher will do justice, avoid prejudice, and further the
convenience. 

(6)  Williams
has the right to sue Fletcher. 

(7)  The
doctrine of res judicata will prevent Williams from suing Fletcher.  

(8)  The
doctrine of collateral estoppel prevents a party from relitigating a particular
fact issue that the party already litigated and lost in an earlier suit.  

(9)  If
Fletcher is severed from the lawsuit, the doctrines of res judicata and/or
collateral estoppel will not prevent Williams from suing him. 

He challenges the trial
court’s sanctions order through the following five issues:

(1)   The
imposition of Rule 13 sanctions requires that the filing must be groundless and
filed in bad faith or for the purposes of harassment.

(2)  The
motion for new trial was not groundless as there remain unresolved issues.  

(3)  The
motion for new trial was not filed in bad faith or for the purposes of
harassment.

(4)  The
Texas Rules of Civil Procedure do not prohibit filing a motion for new trial
when a party challenges a final order.

(5)  The
filing of this motion for new trial does not satisfy the requirements of Texas
Civil Practice & Remedies Code Chapter 10 sanctions. 

ANALYSIS

As an initial matter, we note that in his reply
brief, as well as in a motion to dismiss filed before this case was submitted,[8] Williams
challenges the trial court’s subject matter jurisdiction.  He bases this
challenge on the fact that, on March 3, 2008, the probate court signed an order
approving the accounting and closing the Estate.  Thus, Williams argues that
because the probate court closed the estate on March 3, 2008, it was without
jurisdiction to issue the above-excerpted UM/PIP or sanctions orders.[9] 

First, we note that probate proceedings give rise to
a recognized exception to the general rule that only final judgments are
appealable.  This exception accommodates appeals of interim orders rendered on
discrete issues before the entire probate proceeding is concluded.  See de
Ayala v. Mackie, 193 S.W.3d 575, 578 (Tex. 2006).  Second, the March 3,
2008 order purporting to close the Estate does not adjudicate any of the issues
raised in the personal injury and wrongful death suit filed on behalf of the
Estate and Williams, nor does it include any language of finality.  Thus, even
though it purports to close the estate, there were still unadjudicated issues
remaining.  See Lehman v. Har-Con Corp., 39 S.W.3d 191, 205–06 (Tex.
2001) (noting that an order that appears to be final may not actually be final
if the record reveals the existence of other parties or claims not disposed of
in the order).  Further, the record reflects that on November 13, 2008, the
probate court signed another order discharging the successor administrator,
sureties, and finally closing the administration of the Estate.  It thus
appears that the trial court had jurisdiction when it signed the November 10,
2008 settlement order described above.  This settlement order became final when
Williams’ appeal of that order was dismissed by this court and our mandate
issued.  See Williams v. Fletcher, No. 14-09-00198-CV, 2009 WL 1416123,
at *1 (Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (per curiam, mem.
op.) (dismissing Williams’ appeal of the settlement order for want of
jurisdiction); cf. Edwards Aquifer Auth. v. Chem. Lime, Ltd., 291 S.W.3d
392, 416 n.19 (Tex. 2009) (listing cases establishing that issuance of mandate
renders judgment final).  

Finally, regarding the orders at issue here, the
UM/PIP order and the sanctions order arose from the trial court’s efforts to
enforce the earlier settlement order.  Trial courts have both statutory and
inherent power to enforce their judgments.  Tex. R. Civ. P. 308 (“The court
shall cause its judgments and decrees to be carried into
execution. . . .”); see Arndt v. Farris, 633 S.W.2d 497,
499 (Tex. 1982) (orig. proceeding) (“The general rule is that every court
having jurisdiction to render a judgment has the inherent power to enforce its
judgments.”).  Accordingly, having satisfied ourselves that the probate court
had the authority to issue these orders, we turn to the merits of Williams’
issues.  

A.        The
Appeal from the UM/PIP Order

1.         Fletcher
is not a party to this lawsuit.

In his first issue, Williams asserts that by filing a
petition in intervention, Fletcher became a party to this lawsuit.  We agree
with the proposition that intervening in a lawsuit makes one a party to the
lawsuit.  See Tex. R. Civ. P. 60 (“Any party may intervene by filing a
pleading, subject to being stricken out by the court for sufficient cause on
the motion of any party.”).  In this case, however, Simmons & Fletcher, not
Keith M. Fletcher, intervened in this lawsuit.  Thus, we disagree with
Williams’ contention that Fletcher became a party to this lawsuit because it
was not he who intervened in the suit.  We overrule his first issue.

2.         The
UM/PIP order is an appropriate final order.

In his second issue, Williams complains that the
UM/PIP order is incorrect and unjust because it contains language of finality despite
the fact that all issues between the parties have not been resolved.  Williams
contends in his third issue that he preserved error on this complaint by
advising the trial court that he disagreed with the finality language in this
order.  A judgment is final if it disposes of all parties and claims in the
lawsuit.  See Ford v. Exxon Mobil Chem. Co., 235 S.W.3d 615, 617
(Tex. 2007).  Here, Williams lists several issues that remain “unresolved”
between the parties:  alleged breaches of fiduciary duty and negligence,
alleged statutory violations, and the alleged lack of a valid contract between
the Estate and Keith Fletcher.  Williams, however, does not direct us to, nor
have we found, any pleadings supporting any of these claims in this lawsuit. 
Indeed, in his reply brief, Williams concedes that he has not yet filed a
lawsuit against Keith Fletcher.  Although these issues may remain unresolved,
they are not part of this particular lawsuit.  Because Williams has not
directed us to any outstanding claims in this lawsuit, he has not demonstrated
that the trial court’s finality language in the UM/PIP order was erroneous.  We
therefore overrule Williams’ second issue.  We further overrule his third issue
as moot because of our disposition of his second issue.

3.         Generally, a
litigant cannot accept the benefits of a judgment and still prosecute an appeal
from that judgment.

In his fourth issue, Williams asserts that he was
precluded from accepting the UM/PIP checks as ordered by the trial court
because accepting them would have indicated his agreement with the judgment. 
Generally, a litigant cannot accept the benefits of a judgment and then
prosecute an appeal.  See Tex. State Bank v. Amaro, 87 S.W.3d 538, 544
(Tex. 2002).  However, we have already concluded that the UM/PIP order was an
appropriate final order.  Further, no one has complained about Williams’
failure to accept the UM/PIP checks; essentially, Williams’ argument is
premature:  any ruling on the merits of this issue would be advisory in nature.
 We are prohibited from issuing advisory opinions because to do so would
violate the Texas Constitution’s separation-of-powers article.  See S. Tex.
Water Auth. v. Lomas, 223 S.W.3d 304, 307 (Tex. 2007) (“Our
separation-of-powers article prohibits courts from issuing advisory opinions
that decide abstract questions of law without binding the parties, as that is a
function of the executive rather than the judicial branch.”).  We conclude that
this issue presents nothing for our review and overrule it.

4.         A
non-party may not be dropped from a lawsuit.

In his fifth issue, Williams asserts that Fletcher
should be severed from this lawsuit.[10] 
In his related seventh, eighth, and ninth issues, Williams asserts that
Fletcher should be severed from this lawsuit because the doctrines of res
judicata and collateral estoppel will prevent him from suing Fletcher.  As
discussed above, however, Fletcher is not a party to this lawsuit; he did not
intervene in the case.  Instead, Simmons & Fletcher intervened into the
lawsuit to obtain payment of its fees and expenses.

Moreover, even if we were to construe these issues as
a request to drop Simmons & Fletcher from this lawsuit, this request would
be denied for an additional reason:  Williams did not file a motion to do so in
the trial court.  To preserve a complaint for appeal, the record must reflect
that the complaint was made to the trial court by a timely request, objection,
or motion.  See Tex. R. App. P. 33.1(a).  Williams does not direct us
to, nor have we found, any motion to drop either Fletcher or Simmons &
Fletcher from this lawsuit.  Finally, ruling on the merits of Williams’
contentions that the doctrines of res judicata or collateral estoppel would
prevent him from suing Fletcher,[11]
when, as Williams admits, he has not yet attempted to do so, would again be
offering an advisory opinion.  See S. Tex. Water Auth., 223 S.W.3d at
307.  For these reasons, we overrule Williams’ fifth, seventh, eighth, and
ninth issues.

5.         Williams
may have the right to sue Keith Fletcher.

In his sixth issue, Williams states that he has the
right to sue Keith Fletcher.  In the argument supporting this issue, Williams
lists a litany of alleged wrongdoing by Fletcher and various other individuals
involved in the personal injury lawsuit.  Because Williams has not directed us
to any claims in this lawsuit against Fletcher, however, any ruling on
the merits of this issue would be advisory.  As discussed above, we are
precluded from offering advisory opinions by the separation-of-powers
doctrine.  See id.  This issue thus presents nothing for our review and
is overruled.

B.        The
Appeal from the Sanctions Order

            As described
above, Williams challenges the trial court’s entry of the sanctions order on
five grounds.[12] 
The trial court granted the sanctions at issue here under both Texas Rule of
Civil Procedure 13 (“Rule 13”) and Texas Civil Practice & Remedies Code Chapter
10 (“Chapter 10).  

1.         Standard of Review and Applicable
Law

We review a trial court’s imposition of sanctions
under both Chapter 10 and Rule 13 for an abuse of discretion.  See Low v.
Henry, 221 S.W.3d 609, 613–14 (Tex. 2007).  We may reverse the trial
court’s ruling if the trial court acted without reference to guiding rules and
principles such that its ruling was unreasonable or arbitrary.  Id. at
614.  We must ensure that there is a direct nexus between the improper
conduct and the sanction imposed to determine if the sanctions were
appropriate.  Id.  Courts must generally presume that pleadings are
filed in good faith, and the party seeking sanctions bears the burden of
overcoming this presumption.  See id.

Chapter 10 provides that:

The signing of a pleading or motion as required by the
Texas Rules of Civil Procedure constitutes a certificate by the signatory that
to the signatory's best knowledge, information, and belief, formed after
reasonable inquiry:

(1)  the pleading or motion is
not being presented for any improper purpose, including to harass or to cause
unnecessary delay or needless increase in the cost of litigation;

(2)  each claim, defense, or
other legal contention in the pleading or motion is warranted by existing law
or by a nonfrivolous argument for the extension, modification, or reversal of
existing law or the establishment of new law;

(3)  each allegation or other
factual contention in the pleading or motion has evidentiary support or, for a
specifically identified allegation or factual contention, is likely to have
evidentiary support after a reasonable opportunity for further investigation or
discovery; and

(4)  each denial in the pleading
or motion of a factual contention is warranted on the evidence or, for a
specifically identified denial, is reasonably based on a lack of information or
belief.

Tex. Civ. Prac. & Rem.
Code § 10.001 (West 2002).  

            2.         Application

Here, in his fifth issue, Williams contends that the
award of sanctions based on his filing his motion for new trial does not meet
the requirements of Chapter 10 sanctions because (1) it was not presented to harass
but rather to inform the trial court and Fletcher that all issues “between the
Appellant, the Appellee and other[s] responsible” were not yet resolved, (2) it
was warranted by existing law and was filed to extend appellate deadlines, and
(3) each claim in the motion for new trial has evidentiary support.  However,
Williams has not identified what existing law warrants the grounds for relief
asserted in this motion.  Further, as discussed above, Williams’ argument contesting
the “Mother Hubbard” and finality language of the UM/PIP order has no legal
basis because the only claims he has identified are potential claims, rather
than actual claims that have been pleaded in this lawsuit.  Under these
circumstances, the trial court’s finding that “Williams’ Motion for New Trial
is not warranted by existing law or by a nonfrivolous argument for the
extension, modification, or reversal of existing law” is supported by the
record.  We thus conclude the trial court did not abuse its discretion in
ordering sanctions against Williams under Chapter 10.[13]  

Williams has not challenged the amount of the
sanctions ordered.  Further, at the hearing on the motion for sanctions, Fletcher’s
attorney testified that he spent 12.3 hours reviewing and responding to
Williams’ motion for new trial and that his hourly rate was $300, which he
testified was a reasonable rate.  According to the sanctions order prepared by
Fletcher’s attorney, Fletcher sought only $2,880.00 as a sanction, which was
actually less than the value of his attorney’s total time.  We thus conclude that
a direct nexus exists between the improper conduct and the sanction imposed.  See
Low, 221 S.W.3d at 614.  In sum, we cannot say the trial court abused
its discretion in ordering the sanctions, and we overrule all five of Williams’
issues relating to the sanctions order.

CONCLUSION

Having overruled appellant’s issues relating to the
trial court’s UM/PIP order as well as his challenges to the trial court’s
sanctions order, we affirm the trial court’s orders.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel consists of Chief Justice Hedges
and Justices Frost and Jamison. 









[1]
Donn Williams, the pro se appellant in this case, filed his briefs under the
style “Donn L. Williams v. Keith M. Fletcher.”  However, the trial court cause
number, the orders from which he appeals and his notices of appeal all reflect
the style, “In the Estate of Virginia Williams, Deceased.”  Moreover, nothing
in our record indicates that Keith M. Fletcher is a party to this lawsuit.  The
petition in intervention Williams refers to throughout his briefing was filed
by the law firm Simmons & Fletcher, not by Keith M. Fletcher, individually.






[2]
At some point in time, a guardian ad litem was appointed for Williams.  Our
record does not indicate when the guardian ad litem was appointed or removed. 
It is clear that the guardian ad litem was removed sometime prior to this
appeal, which was filed by Williams pro se.





[3]
The record reflects that various attorneys represented Williams or the Estate
during the settlement of this case.  Williams’ attorney-in-fact, Elwin Maiden,
also represented him in several proceedings. 





[4]
Lockings agreed to not withdraw as counsel in an effort to finalize this
dispute.





[5]
The record reflects that “PIP” is an acronym for Personal Injury Protection
insurance.  Both “UIM” and “UM” are acronyms for Uninsured/Underinsured
Motorist insurance.  These acronyms are used throughout this opinion.





[6]
See Williams v. Fletcher, No. 14-09-00198-CV, 2009 WL 1416123, at *1
(Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (per curiam, mem. op.). 






[7]
All the motions for new trial and the notices of appeals in both cause numbers
were signed “Donn Williams/By Permission” and stated that Williams was acting
pro se.  We notified Williams that his pro se notices of appeal could not be
signed “by permission,” and he filed amended notices with his signature. 
Additionally, he signed all his pro se briefs.





[8]
This motion was denied by this Court.





[9]
In response to Williams’ claim that the probate court lacked jurisdiction over
his own lawsuit once his mother’s estate was closed, we have previously held
that jurisdiction over related claims may continue in the probate court even
after the estate claims are settled.  Cf. Sabine Gas Transmission Co. v.
Winnie Pipeline Co., 15 S.W.3d 199, 201–02 (Tex. App.—Houston [14th Dist.]
2000, no pet.) (“Should the court have desired, it could have dismissed the
claims based on a finding that its continued entertainment of them would not
promote ‘judicial efficiency and economy.’  However, the probate did not lose
jurisdiction; its jurisdiction over the claims would still run concurrently
with the district court.”); see also In re Estate of Trevino, 195 S.W3d
223, 228 (Tex. App.—San Antonio 2006, no pet.) (en banc).  Additionally, the
sections of the Texas Probate Code in effect at the time this lawsuit was
commenced provide that a probate court “has concurrent jurisdiction with the district
court in all personal injury, survival, or wrongful death actions by or against
a person in the person’s capacity as a personal representative[,]”Tex. Probate
Code Ann. § 5(e) (West 2003), and “may exercise the pendant and ancillary
jurisdiction necessary to promote judicial efficiency and economy.”  Act of
April 18, 1989, 71st Leg., R.S., ch. 1035 § 3, 1989 Tex. Gen. Laws 4164, repealed
by Act of April 2, 2009, 81st Leg., R.S., ch. 1351 § 12(h), 2009 Tex. Gen.
Laws 4279.  Thus, we conclude that in order to promote judicial efficiency and
economy, the probate court properly retained jurisdiction over Williams’ claims
even after his mother’s estate was closed.  





[10]
We note that claims, not parties, are subject to severance.  See Tex. R.
Civ. P. 41.  Parties are generally added or dropped.  See Tex. R. Civ.
P. 41.  





[11]
In many of his issues, Williams attempts to collaterally attack the trial
court’s settlement order.  As discussed above, however, this order became final
when we dismissed Williams’ settlement-order appeal.  Collateral attacks on a
final judgment run counter to the strong policy of finality by attempting to
bypass the appellate process.  See Browning v. Prostok, 165 S.W.3d 336,
346 (Tex. 2005).  Because Williams did not timely appeal the trial court’s
earlier settlement order, he has forfeited any attack on the finality of that
order and may not attempt to collaterally attack it through this lawsuit.  See
id. at 345–46.





[12]
We note that the sanctions order requires Williams and Elwin Maiden, jointly
and severally, to pay the sanctions at issue here.  Elwin Maiden neither
noticed his appeal, nor joined in Williams’ brief; thus this order is final as
to Elwin Maiden.





[13]
Because we have determined that the trial court did not abuse its discretion in
ordering sanctions under Chapter 10, we need not consider whether sanctions
were appropriate under Rule 13.